[This opinion has been published in *Ohio Official Reports* at 74 Ohio St.3d 607.]

OFFICE OF DISCIPLINARY COUNSEL *v*. FREASE.

[Cite as *Disciplinary Counsel v. Frease*, 1996-Ohio-122.]

*Attorneys at law—Misconduct—Indefinite suspension—Full restitution to clients a condition for reinstatement—Conduct involving misrepresentation—Conduct adversely reflecting on fitness to practice law—Neglect of an entrusted legal matter—Failure to carry out contract of employment—Failure to preserve identity of client funds in an identifiable bank account.*

(No. 95-2130—Submitted December 6, 1995—Decided February 28, 1996.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 93-75.

_____

{¶ 1} On December 6, 1993, relator, Disciplinary Counsel, filed a complaint, which it amended on November 3, 1994, November 21, 1994, November 29, 1994, and February 22, 1995, charging respondent, John B. Frease of Canton, Ohio, Attorney Registration No. 0021149, with violations of the Disciplinary Rules. The parties stipulated to the charged disciplinary violations, and a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court heard this matter on September 26, 1995.

COUNT I

{¶ 2} On November 30, 1990, Donald Lucas retained respondent to register a patent, paying him $400. Respondent requested a patent search investigator to begin an investigation into Lucas's invention, a satellite dish actuator.

{¶ 3} On January 18, 1991, respondent received $2,315 from Lucas at the signing of the necessary papers to apply for the patent. Respondent advised Lucas that the papers would be filed immediately. However, after numerous contacts by Lucas, respondent admitted to Lucas that he had not filed the applications. The

United States Department of Commerce, Patent and Trademark Office, received the patent application on July 30, 1992.

{¶ 4} On October 5, 1992, Lucas paid respondent an additional $375 to proceed with the claim. On November 14, 1992, the patent office notified respondent that it had received the application and reviewed it and that amendments to it were due on or before January 14, 1993. Respondent timely filed the amendments and, on February 5, 1993, received notice of allowability from the patent office. However, respondent did not contact Lucas to advise him that his application had been approved. After numerous calls to respondent, Lucas finally contacted the patent office himself to learn that the patent had been allowed in February 1993.

{¶ 5} Nevertheless, respondent failed to perfect the patent by sending the formal drawings as requested by the February 5, 1993 notice, and the time period for allowability lapsed. On learning that the patent application had been allowed to expire, Lucas canceled respondent's power of attorney for use in the patent procedures. He then retained new legal counsel to obtain the reissue of the patent. Lucas incurred additional expenses of $1,410.95 to complete the patent application.

COUNT II

{¶ 6} In the fall of 1990, Myndilee Wong retained respondent to obtain a patent for a total fee of $2,000. After receiving the fee, respondent failed to return phone calls to his client.

{¶ 7} In June 1991, respondent requested additional funds from Wong, even though he previously told her that the initial $2,000 fee would cover all costs and fees. Respondent advised Wong that he would not proceed any further in her case until he received the additional fees. On June 28, 1991, respondent issued an invoice for an additional $643.35. After receiving payment in July 1991, respondent filed the patent application. Respondent maintains that he does not

recall ever representing that the amount of $2,000 would be all the fees and expenses required.

{¶ 8} In October 1991, Wong received notice from the patent office that the check issued by respondent for the patent application fee had been dishonored for insufficient funds. Respondent issued a replacement check in December 1991.

{¶ 9} The patent was accepted with the requirement that the line drawings be resubmitted, since the drawings were too fuzzy. This occurred because respondent had not submitted the original drawings from the drafter, but had provided fax copies of the drawings. The drafter would not supply the originals to Frease until the drafter's bill was paid. Due to the problems concerning the drawings and the bounced check, Wong retained new counsel to complete the patent process.

## COUNT III

{¶ 10} In January 1992, Robert E. Wikel, President of Wikel Bulk Express, Inc., retained respondent to apply for the registration of a trademark. Respondent prepared the application, and it was signed on February 14, 1992. At that time, respondent received a check for $750 to cover filing costs and attorney fees.

{¶ 11} Since he had not heard from respondent for over eleven months, Wikel attempted to contact respondent on numerous occasions, including by telephone, letter, and fax machine. On May 3, 1993, Wikel submitted a grievance letter to relator. On receiving the letter of inquiry from relator, respondent contacted Wikel to work out a resolution to the complaint. During a meeting with Wikel on June 18, 1993, respondent admitted that he had never filed the application for the trademark registration because he had a drinking problem and was short of money. Wikel had paid respondent $1,250 to cover the search fees, costs, and attorney fees.

## COUNT IV

**{¶ 12}** Respondent has not paid his attorney registration fees for the 1993-1995 biennium due by September 1, 1993.

COUNT V

**{¶ 13}** From November 8, 1990 through November 20, 1992, respondent's attorney checking account was charged with thirty-two returned check charges, representing thirty-seven individual returned checks. Respondent does not have, nor has he ever had, an attorney trust account, even though he received funds from clients that were moneys for work yet to be performed.

COUNT VI

**{¶ 14}** In 1989, William and Patsy Ackerman retained respondent to conduct a trademark search and then register a trademark for "Pro-line." In 1989 and 1990, the Ackermans paid respondent $1,500.

**{¶ 15}** Respondent advised the Ackermans that the matter had been taken care of so they could proceed to erect a sign with the trademarked name. The Ackermans placed a sign with the trademark name at a cost of $3,500. Approximately three months after the sign was put in place, the Ackermans learned that the trademark name of "Pro-line" did not belong to them.

**{¶ 16}** After the Ackermans attempted unsuccessfully to contact respondent on numerous occasions, including telephone calls, letters, and a visit to his office, they contacted relator. Relator subpoenaed the Ackerman file from respondent, but the file could not be produced because respondent had failed to pay his law office rent. His landlord had taken possession of the premises, resulting in the loss of his equipment and files. Respondent's legal files were dumped into a landfill.

## COUNT VII

{¶ 17} In December 1991, Edward S. Kendziorski retained respondent to prepare and file a patent application for a product Kendziorski had invented. Kendziorski paid respondent $2,700 for these legal services. Respondent, however, did not complete the processing of Kendziorski's patent.

{¶ 18} Kendziorski repeatedly tried to contact respondent requesting the return of his retainer and papers. Also, Kendziorski's son, a Pennsylvania attorney, was unable to communicate with respondent to obtain needed information and materials from respondent. Respondent is unable to produce Kendziorski's file because his landlord has disposed of it at the landfill.

## COUNT VIII

{¶ 19} In June 1992, Arthur D. Bissett retained respondent to file a patent application on a system for controlling frost damage in orchards. Bissett paid respondent $4,579 for the full patent process.

{¶ 20} Respondent advised Bissett that he had filed the patent application when in truth he had not. In April 1994, Bissett became suspicious, as respondent would not show him a receipt or the issued serial number on the application. Bissett's last contact with respondent was on April 5, 1994, when respondent admitted that he had not done the work as previously asserted.

## COUNT IX

{¶ 21} In approximately May 1991, Floyd Wack (now deceased) retained respondent for $1,200 to obtain a patent on a flagpole clip device. Respondent did not work on the patent as retained and has failed to return telephone calls and messages to Wack's surviving spouse or her legal counsel.

## COUNT X

{¶ 22} John Smith and Niles Metcalf retained respondent for $2,000 to process a patent. He filed for the patent on August 28, 1992. In early 1993, respondent received the notice of allowability and amount for the allowance fee.

Respondent maintains that he could not contact Smith. In December 1994, the patent office considered the application for patent abandoned.

{¶ 23} After not hearing from respondent for over one and one-half years, Smith contacted the patent office and learned that the patent had been granted but then abandoned as appropriate fees were not received. In December 1994, Smith located respondent and met with him to receive the patent papers. Since that meeting, Smith has made numerous attempts to contact respondent to obtain his papers and a refund of his money. However, respondent has not contacted Smith nor refunded any money to him.

{¶ 24} In mitigation, respondent testified that after the accidental death of his son in 1980, he began to drink. This drinking problem became more pronounced and led to the decline of his practice. He could not recall many of the representations he had made to his clients about the work he would do for them. By the time of the panel hearing, respondent had attended alcoholic rehabilitation sessions and was a regular attendee at Alcoholics Anonymous meetings. Two of his associates testified about his sincere efforts to maintain his sobriety. At the time of the hearing, he worked at a pizza restaurant for a salary just above the minimum wage.

{¶ 25} The panel concluded that respondent's conduct in representing his clients resulted in the following violations:

(1) Lucas—DR 1-102(A)(4) (conduct involving misrepresentation), 1-102(A)(6) (conduct adversely reflecting on fitness to practice law), 6-101(A)(3) (neglect of a legal matter entrusted to him),[1] 7-101(A)(2) (failure to carry out a contract of employment), and 9-102(A) (failure to preserve the identity of the funds of a client in an identifiable bank account).

---

1. The complaints, the stipulations, and the reports of the panel and the board all mistakenly cite DR 6-101(A)(2) for neglect of an entrusted legal matter. The correct citation is DR 6-101(A)(3).

(2) Wong -- DR 1-102(A)(4), 1-102(A)(6), 6-101(A)(3), 7-101(A)(2), and 9-102(A).

(3) Wikel -- DR 1-102(A)(4), 1-102(A)(6), 6-101(A)(3), 7-101(A)(2), and 9-102(A).

(4) Ackermans -- DR 1-102(A)(4), 1-102(A)(6), 6-101(A)(3), 7-101(A)(2), and 9-102(A).

(5) Kendziorski -- DR 1-102(A)(4), 1-102(A)(6), 6-101(A)(3), and 9-102(A).

(6) Bissett -- DR 1-102(A)(4), 1-102(A)(6), 6-101(A)(3), and 9-102(A).

(7) Wack -- DR 1-102(A)(4), 1-102(A)(6), 6-101(A)(3), and 9-102(A).

(8) Smith -- DR 1-102(A)(4), 1-102(A)(6), 6-101(A)(3), 7-101(A)(2), and 9-102(A).

**{¶ 26}** The panel, agreeing with the stipulation of the parties, recommended that we suspend respondent indefinitely from the practice of law.

**{¶ 27}** The board adopted the findings of fact, conclusions, and recommendation of the panel and also recommended that we suspend respondent indefinitely from the practice of law.

---

*Geoffrey Stern*, Disciplinary Counsel, and *Sally Ann Steuk*, Assistant Disciplinary Counsel, for relator.

*Jerry F. Whitmer*, *John C. Fickes* and *John A. Schwemler*, for respondent.

---

*Per Curiam.*

**{¶ 28}** After reviewing the record, we agree with the board. We adopt its findings of fact and conclusions of law and indefinitely suspend respondent from the practice of law in Ohio. Furthermore, as a condition for reinstatement, respondent must make full restitution to his clients with interest according to the judgment rate. We tax costs to respondent.

*Judgment accordingly.*

MOYER, C.J., DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

COOK, J., dissents and would disbar.

———————————